IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:23-cr-00349-CNS

UNITED STATES OF AMERICA,

     Plaintiff,

v.

DAVIN MEYER,

     Defendant.

---

## MOTION FOR DISCOVERY

Davin Meyer, through counsel, respectfully requests that the Court enter an Order requiring the government to disclose the information listed below:

### Grand Jury Materials

The defense requests disclosure of grand jury testimony and exhibits subject to a protective order. The Court may order the disclosure of grand jury materials to defense counsel "in connection with a judicial proceeding" or upon a showing "that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(i),(ii). As described in the defense motions to suppress, Docs. 103, 106, and 109, the criminal complaint and search warrants filed in this case contained material false statements and omissions. These include material misstatements about planning and preparation Davin took before attempting to board his flight and material omissions regarding the confidential human sources' overwhelming role in getting Davin to that flight. These material false statements and

omissions were made in a criminal complaint and affidavit. They were almost certainly made in front of the grand jury, and may be grounds for dismissal of the Indictment.

Defense counsel conferred with the government about this request. The government responded that it opposes defendant's motion for grand jury testimony and exhibits because it does not anticipate calling a grand jury witness at trial. This statement raises further questions about the propriety of the grand jury proceedings and further demonstrates the need for disclosure.

### Surveillance Techniques

The government uses the Foreign Intelligence Surveillance Act ("FISA") and the FISA Amendments Act of 2008 ("FAA") to conduct sweeping surveillance of communications entering or leaving the United States. *See, e.g.*, *United States v. Hasbajrami*, 11-cr-623-LDH (E.D. N.Y. Jan. 21, 2025) (summarizing FISA and FAA). For example, Section 702 of the FAA authorizes multiple agencies to compel the assistance of electronic communication service providers to collect a wide range of information for "a multitude of purposes." *Id.* FISA and FAA rules provide few checks on this enormous surveillance power. *Id.* Even so, there have been numerous documented abuses of these surveillance programs. *E.g.*, *Redacted*, 2011 WL 10945618, at n. 15 (Foreign Intel. Surv. Ct. Oct. 3, 2011) ("The government's revelations regarding the scope of NSA's upstream collection implicate 50 U.S.C. § 1809(a), which makes it a crime (1) to 'engage[ ] in electronic surveillance under color of law except as authorized' by statute."). Even when the government follows the rules, the government collects thousands, if not millions, of Americans' communications without a warrant under these

2

programs. At least one federal court has since held that searching those troves of communications without a warrant violates the Fourth Amendment. *United States v. Hasbajrami*, 11-cr-623-LDH (E.D. N.Y. Jan. 21, 2025). Often, the government fails to provide timely disclosure that information about the defendant was obtained under FISA or the FAA. *E.g.*, *id.* at 1-2 (government failing to disclose until after conviction, resulting in reversal of the conviction).

Given the government's long history of abusing its surveillance powers, failing to disclose when it employs those surveillance powers, and violating defendants' Fourth Amendment rights as a result, the defense requests disclosure of all surveillance techniques used to monitor, obtain, or elicit Davin's communications and the results of that surveillance. This would include any websites or other applications created by the government or monitored by the government for purposes of surveillance or investigation. Only with this information can the defense assess whether additional suppression motions will be required. In addition, if the government employed these techniques and didn't find anything, that in and of itself is exculpatory and must be disclosed to the defense.

Defense counsel conferred with the government about this request. The government responded that it has met its discovery obligations, including its *Brady* obligations, and has disclosed surveillance used in the case to the extent required. The government objects to the FISA request on the basis that it has met its obligations, if any, under FISA.

3

**Confidential Human Source Identities and *Brady/Giglio* Materials**

Davin is charged with attempting to provide material support to a terrorist organization. Nearly all of the evidence the government relies on in this case came from communications between Davin and two individuals who pretended to be ISIS agents. These two people are referred to only as "CHS-1" and "CHS-2." It is anticipated that both CHS-1 and CHS-2 will testify at trial. In addition, discovery indicates that at least one individual, and potentially more, acted as an informant in this case, and was an eye or ear witness to material transactions which may be at issue in the trial of this matter. These include, but are not limited to, Undercover Employee ("UC").

The defendant is entitled to disclosure of the identities of all of the above-mentioned people pursuant to his rights under the Fifth and Sixth Amendments to the United States Constitution. *Roviaro v. United States*, 353 U.S. 53, 62 (1957); *United States v. Reardon*, 787 F.2d 512, 517 (10th Cir. 1986); *United States v. Martinez*, 487 F.2d 973, 975 (10th Cir. 1973).

In addition, pursuant to *Giglio v. United States*, 405 U.S. 150 (1972) and *Brady v. Maryland*, 373 U.S. 83 (1963), defendant moves for disclosure of evidence which may impeach the credibility of the informant(s), CHSs, and UC(s). The evidence requested includes, but is not limited to, the following:

a. Criminal history of the CHSs, confidential informants, UCs, and others described above, including convictions, arrests, pending charges, and any charges being held in abeyance. *See United States v. Alvarez-Lopez*, 559 F.2d 1155, 1158 (9th Cir. 1977).

b. Any promises made or assurances given by the government, including formal or informal grants of immunity, and any other incentives given to the CHS, informant, or undercover employee, including payment for services. *See United States v. Bagley*, 473 U.S. 667, 676 (1985). This includes but is not limited to: dropped or reduced charges; immunity; expectations of downward departures or motions for reductions of sentence; assistance in a state or local criminal proceeding; considerations regarding forfeiture of assets; stays of deportation or other immigration status considerations; S-Visas; monetary benefits; non-prosecution agreements; letters to other law enforcements (e.g., stale prosecutors, parole boards) setting forth the extent of a witness's assistance or making substantive recommendations on the witness's behalf; relocation assistance; consideration or benefits to culpable or at risk third-parties.

c. Proffer statements from communications with the government, whether monetary, immunity-related or leniency, in return for testimony, including proffers made by lawyers for such witnesses, including any notes taken by an agent or other law enforcement officer.[1] *See United States v. Sudikoff*, 36 F.Supp.2d 1196, 1203 (C.D. Cal. 1999).

---

[1] DOJ policy advises agents to preserve all notes and recordings of interviews with informants or cooperating witnesses. *See* Department of Justice, Justice Manual, "Criminal Discovery," § 9-5.002(B)(8) https://www.justice.gov/jm/jm-9-5000-issues-related-trials-and-other-court-proceedings.

d. Any material that indicates any variations in the witness's proffered statements or testimony.[2]

e. Communications between informants/CHSs/UCs and government agents. *Roviaro*, 353 U.S. at 60-61.

f. All cases in which the confidential informant/CHS/UC has appeared as a witness on behalf of the prosecution. *See Johnson v. Brewer*, 521 F.2d 556, 562 (8th Cir. 1975).

g. Any and all drug rehabilitation programs entered into by the confidential informant /CHS/UC and/or evidence of the confidential informant's/CHS's/UC's drug use history. *See United States v. Fowler*, 465 F.2d 664, 668 (D.C. Cir. 1972).

h. Evidence of any psychiatric treatment or other information that may impeach the witness's capacity and opportunity to observe, recall and narrate. *See United States v. Partin*, 493 F.2d 750, 762-64 (5th Cir. 1974); *Willman v. Powell*, 293 F.2d 605-06 (5th Cir. 1961).

i. The name and last known address of any witness. *See United States v. Mapue*, 834 F.2d 1311 (7th Cir. 1987).

j. Guilty verdicts, juvenile adjudications or other bad acts, including but not limited to relevant docket numbers and jurisdiction of pending cases and probation or presentence reports of any witness. F.R.E. 609. This includes

---

[2] *See* Justice Manual, *supra* note 1 at § 9-5.002(B)(8)(a) ("Material variances in a witness's statements should be memorialized, even if they are within the same interview, and they should be provided to the defense as *Giglio* information.").

evidence that a witness is under investigation by federal, state or local authorities for criminal conduct, and F.R.E. 608(b) allows, in some instances, for cross-examination of witnesses for specific instances of misconduct, even though such behavior did not result in felony conviction or arrest. Acts which involve deceit, fraud or false statements or impeach the witness' truthfulness or show motive, intent, knowledge, common plan, scheme are subject to disclosure. *See* F.R.E. 404(b), *United States v. Hibler*, 463 F.2d 455, 460 (9th Cir. 1972), *United States v. Strifler*, 851 F.2d 1197 (9th Cir. 1988), *United States v. Chavez-Vernaza*, (9th Cir. 1988), *United States v. Auten*, 632 F.2d 478 (5th Cir. 1980), *United States v. Leichtfuss*, 331 F. Supp. 723, 736 (N.D. Ill. 1971), *United States v. Alvarez-Lopez*, 559 F.2d 1155 (9th Cir. 1977).

k.  Any evidence of a witness' wrongdoing, even if it did not amount to a felony conviction or involved elements of moral turpitude or bad character. *See Alvarez-Lopez*, 559 F.2d 1155; *Green*, supra. This request includes information concerning the witness' vulnerability to prosecution, parole or probation revocation, or other sanctions. *See United States v. Bonnanno*, 420 F.2d 1060 (2nd Cir. 1970) (Government's must disclose outstanding indictment against a witness as the pending charge would have shown a possible motivation for the witness to testify favorably for the Government); *United States v. Padgent*, 452 F.2d 701 (2nd Cir. 1970), *United States v. Crumley*, 565 F.2d 945-50 (5th Cir. 1978), *United States v. Gerard*, 49 F.2d 1300, 1304 (9th Cir. 1974).

l. Any information related to or that could be a source of a witnesses' bias, motive or intent. *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987); *Davis v. Alaska*, 415 U.S. 318, 315 (1971), *United States v. Ray*, 731 F. 2d 1361-64 (9th Cir. 1984), *Chipman v. Mercer*, 628 F.2d 528 (9th Cir. 1980), *Patterson v. McCarthy*, 581 F. 2d 220 (9th Cir. 1978). This includes information of any ongoing investigations in which any witness was or is involved as an informant, confidential or otherwise witness or provider of information. *United States v. Shaffer*, 989 F.2d 682, 689 (9th Cir. 1986).

m. Any threats—express or implied and direct or indirect—directed against any witness in the form of criminal prosecutions, investigations, or potential prosecutions pending. *United States v. Dupay*, 760 F.2d 1492 (9th Cir. 1975); *United States v. Sutton*, 542 F.2d 1239 (4th Cir. 1976) (error for the prosecution not to disclose a threat by the FBI agent which was intended to induce a witness' cooperation).

n. The existence and identification of each occasion of which a witness has testified before a court, grand jury, or other tribunal body or made other statements that must be disclosed so defendant can order transcripts of testimony for use in cross-examination, or investigative sources or extrinsic impeachment. *See* C.R.E. 801(d)(1) and 806. If the Government has information which may lead to proof of prior inconsistent statements or other evidence helpful to Defendant, fundamental fairness requires that it be turned

over to the defense without further delay. *Davis v. Hayd*, 479 F.2d 446 (5th Cir. 1973).

o. Oral or written results of any polygraph test administered to any witness whether by the prosecution or the FBI for the witness protection program, as well as any witness refusal to take a polygraph test. *See Carger v. Rafferty*, 826 F.2d 299 (3rd Cir 1987).

For these reasons, the defense respectfully requests that the government be ordered to disclose the identities and whereabouts of any such informant(s)/CHSs/UC(s) and the information concerning them as set forth above.

Defense counsel conferred with the government about this request. The government responded that it opposes the request for disclosure of the identities of confidential human sources, it has met its obligations under *Brady*, and it will disclose *Giglio* and *Jencks* materials in advance of any testimony at trial.

**Communications with Local Law Enforcement, Schools, and Agencies**

The defense requests disclosure of communications between the government (including, but not limited to, Task Force Office Joni Tangeman), agents/employees of Arapahoe County District Attorney's Office, Colorado 18th Judicial District Court, Douglas County Human Services, Douglas County School District, or Douglas County Sheriff's Office, including, but not limited to, Chief Deputy District Attorney Clinton McKenzie, Christine Brite, Hope Sarver, Kimberly Priebe, Meredith Velasquez, Shauna Shipps, Kristen Chessnoe, Maggie Cooper, Corey Chance, Paul Rogers, Alan Stanton, Shannon Jensen, Luke Lorenz, Mike Eggen, David Garret, Joel Zink, Kristina Brown,

9

and Robert Rotherham. Representatives of these agencies/entities, including the individuals listed above, met multiple times in the summer of 2022 because Davin's mother reached out for help with addressing Davin's needs and concerns that he was being recruited online by radical Islamic terrorists. Davin's developmental disabilities and capacity were discussed. The Douglas County Sheriff's Office concluded that Davin had committed no crime. Douglas County School District prepared to accept him into specialized programming at school, should he attend. But the government, rather than respond to Davin's mother's pleas and help Davin, instead waited until Davin turned 18 and launched a campaign to induce him to commit the charged offense. The communications among these agencies/entities and with the government regarding Davin's functioning, capacity, and intent are relevant and material to Davin's mental state, whether Davin was predisposed to commit the offense (an element of the entrapment defense under the Tenth Circuit pattern instructions), whether the government's conduct rises to the level of extreme and outrageous conduct requiring dismissal, and whether Davin's actions rose to the level of "an act which, in the ordinary and likely course of events, would lead to the commission of the particular crime" (Tenth Circuit pattern instruction 1.27 for attempt).

Defense counsel conferred with the government about this request. The government responded that with respect to these communications it has met its *Brady* obligations; it will disclose *Giglio* and *Jencks* materials, if any; and it opposes the request to the extent it encompasses materials that exceed the government's discovery obligations.

10

**Subpoenas and 2703 Requests**

Discovery shows that the government received responses to subpoenas and/or other legal requests from Apple (INV_279, 290, 530); Google (INV_78, 221); Amazon (INV_75, 106, 280); Meta (INV_296, 303, 310, 318); Microsoft (INV_88); Textnow (INV_97); Lyft (INV_99); First Bank (e.g., INV_325); Citibank (INV_125); Whatsapp (INV_215); Ad Hoc Labs (INV_217); Comcast (INV_286, 288, 289); and Expedia (INV_292).

Defense counsel has not been able to locate the affidavits, applications, or orders related to these subpoenas and/or other legal requests and the defense requests that they be produced.

Defense counsel conferred with the government about this request. The government responded that it does not oppose the request for 2703(d) applications or orders but notes that it has produced these materials; the government opposes the request for grand jury subpoenas.

**Government Targeting of Individuals with Mental Health Disorders or Disabilities**

A study analyzing 646 federal terrorism-related cases brought against Muslims between 2001 and 2021 showed that the "systematic and aggressive use of sting operations in counterterrorism cases . . . disproportionately targets defendants who are (1) young . . . (2) low-income or unemployed; (3) bombastic blowhards who 'talk, talk, talk, and do nothing'; and (4) unsophisticated, lacking the skills or knowledge to conduct a terrorist attack." Sahar F. Aziz, *Race, Entrapment, and Manufacturing "Homegrown Terrorism"*, 111 Geo. L.J. 381, 388 (2023). "In at least 155 of the 646 federal cases,

there is evidence that the defendant suffers from mental illness." *Id.* The study demonstrates that "many of the Muslim defendants are vulnerable due to their indigence, recent release from prison, or social isolation." *Id.* The vulnerable defendants "are easy targets for unscrupulous informants or sophisticated undercover agents who design, plan, and execute fake terrorist plots." *Id.*

The defense requests disclosure of any internal studies or reports prepared by the Department of Justice or other government agencies assessing the degree to which the government is targeting individuals with mental health problems for sting operations. The defense further requests disclosure of information related to any government efforts to stop targeting individuals with mental health problems or disabilities and/or protect those individuals from sting operations and prosecution. If the government is aware of the problem and taking steps to curtail it, that information is exculpatory, relevant for impeachment, and required for disclosure. If the government is aware of the problem and not taking steps to curtail it, that information is relevant to the government's extreme and outrageous conduct, exculpatory, and relevant for impeachment. If the government has not conducted any analysis of this well-documented and obvious problem, that is also relevant to the government's extreme and outrageous conduct, exculpatory, and relevant for impeachment.

Defense counsel conferred with the government about this request. The government opposes it.

Dated: July 31, 2025.

12

Respectfully submitted,

*s/ David S. Kaplan*

David S. Kaplan
STIMSON LABRANCHE HUBBARD, LLC
1652 Downing Street
Denver, CO 80218
720.689.8909
kaplan@slhlegal.com

*Counsel for Davin Meyer*

**Certificate of Service**

I certify that on July 31, 2025, I electronically filed the foregoing *Motion for Discovery* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Melissa Hindman, AUSA
U.S. Attorney's Office – Denver
1801 California Street, Suite 1600
Denver, CO 80202
melissa.hindman@usdoj.gov

s/ Nancy Hickam
Nancy Hickam, Paralegal