**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 23-cr-00349-REB

UNITED STATES OF AMERICA,

       Plaintiff,

v.

1.  DAVIN DANIEL MEYER,
    a/k/a "Abdul Rahman ibn Meyer,"
    a/k/a "Abdul Rahman al-Amriki,"

       Defendant.

---

**GOVERNMENT'S STATUS REPORT REGARDING DISCLOSURES
PERTAINING TO AN UNDERCOVER OFFICER**

---

The United States of America, by and through undersigned counsel, hereby files this status report on defendant's request for disclosures regarding non-testifying informants, including an individual who the defendant termed "an informant" or "Undercover Employee," *see* ECF No. 113, at 4-9.[1]

## I.    PROCEDURAL HISTORY

On July 31, 2025, the defendant, Davin Daniel Meyer, filed a Motion for Discovery. ECF No. 113. In this motion, the defendant stated that "discovery indicates that at least one individual, and potentially more, acted as an informant in this case . . . includ[ing], but not limited to Undercover Employee ('UC')." *Id*. at 4. The defendant requested identities and *Brady* and *Giglio* materials related to "all of the above-mentioned people." *Id*. The

---

[1]   This filing supplements the government's response, ECF No. 123, to the defendant's motion for discovery, ECF No. 113. Concurrently with this filing, the government filed a supplemental brief *ex parte*, *in camera*, and under seal that relates to the issues discussed in this status report. *See* ECF No. 179.

defendant also requested the "disclosure of evidence which may impeach the credibility of the informant(s), CHSs, and UC(s)." *Id*. Further, the defendant requested the following categories of information regarding these individuals:

A. "Criminal history of the CHSs, confidential informants, UCs, and others described above, including convictions, arrests, pending charges, and any charges being held in abeyance";

B. "Any promises made or assurances given by the government, including formal or informal grants of immunity, and any other incentives given to the CHS, informant, or undercover employee, including payment for services";

C. "Proffer statements from communications with the government, whether monetary, immunity-related or leniency, in return for testimony, including proffers made by lawyers for such witnesses, including any notes taken by an agent or other law enforcement officer";

D. "Any material that indicates any variations in the witness's proffered statements or testimony" as *Giglio* information;

E. "Communications between informants/CHSs/UCs and government agents";

F. "All cases in which the confidential informant/CHS/UC has appeared as a witness on behalf of the prosecution";

G. "Any and all drug rehabilitation programs entered into by the confidential informant /CHS/UC and/or evidence of the confidential informant's/CHS's/UC's drug use history";

H.  "Evidence of any psychiatric treatment or other information that may impeach the witness's capacity and opportunity to observe, recall and narrate";

I.  "The name and last known address of any witness";

J.  "Guilty verdicts, juvenile adjudications or other bad acts, including but not limited to relevant docket numbers and jurisdiction of pending cases and probation or presentence reports of any witness";

K.  "Any evidence of a witness' wrongdoing, even if it did not amount to a felony conviction or involved elements of moral turpitude or bad character";

L.  "Any information related to or that could be a source of a witnesses' bias, motive or intent";

M.  "Any threats—express or implied and direct or indirect—directed against any witness in the form of criminal prosecutions, investigations, or potential prosecutions pending";

N.  "The existence and identification of each occasion of which a witness has testified before a court, grand jury, or other tribunal body or made other statements that must be disclosed so defendant can order transcripts of testimony for use in cross-examination, or investigative sources or extrinsic impeachment";

O.  "Oral or written results of any polygraph test administered to any witness whether by the prosecution or the FBI for the witness protection program, as well as any witness refusal to take a polygraph test."

3

ECF No. 113, at 4-9. As this request pertains to an undercover officer, after receiving defendant's motion for discovery, the government began looking into the information about this individual that it could disclose to defense, including information regarding his/her identity.

On September 4, 2025, this Court held a hearing on, in part, the defendant's motion for discovery. The Court denied the defendant's request for identifying information and certain other categories of requested information for the two CHSs. ECF No. 128; Transcr., Sept. 4, 2025 Mot. Hrg. at 28, 47-48 ("[T]he real issue is can [the defendant] discover the identities of the two CHSs. My answer to that is no, and on that one I will not be persuaded.") During this hearing, the government represented that it expected to be able to present additional information to respond to the defendant's request with regard to disclosures about the undercover officer. *Id*. at 31-32.

## II.  ARGUMENT

The government has produced a significant amount of discovery in this case, including some information beyond its obligations under Fed. R. Crim. P. 16 and *Brady v. Maryland*, 373 U.S. 83 (1963). With regard to the undercover officer ("UCE-1"), the government has met its *Brady* obligations, and it affirms that it will continue to meet its *Brady* obligations. The government opposes the remainder of the defendant's request for disclosures. *First*, the defendant's request for the identity of or any identifying information for UCE-1 should be denied because this information is classified and implicates safety concerns. *Second*, the defendant's request for *Jencks* and *Giglio* materials for UCE-1 should be denied because the government does not intend to call any witness who acted as an undercover officer in the case at trial. *Third*, the defendant's requests for additional

4

materials regarding UCE-1 that are beyond the scope of discovery required by Rule 16 and the government's constitutional obligations should be denied.

> **A.    The defendant's request for the identity of or any identifying information for the undercover officer should be denied.**
>
> > 1.    *The identity of the undercover officer in this case is classified, and the disclosure of this identity would cause significant harm to U.S. national security and jeopardize the safety of UCE-1*

An FBI Undercover Employee ("UCE") is any employee of the FBI, or employee of a Federal, state, or local law enforcement agency working under the direction and control of the FBI in a particular investigation, whose relationship with the FBI is concealed from third parties in the course of an investigative operation by the maintenance of a cover or alias identity.

The FBI devotes substantial resources to identify, train, and support UCE operations throughout the country. FBI UCEs, especially those operating in national security investigations, are highly valuable, non-fungible assets, and the FBI goes to great lengths to effectively train them and protect their true identities. UCEs in international terrorism investigations play a crucial role in countering terrorist activities and are assigned to engage terrorism subjects online or in person to determine their motivation, planning, and potential for violence.

Due to the sensitivities surrounding national security cases in particular, the true identities, as well as information that could be reasonably expected to reveal the true identities, of FBI UCEs involved in national security investigations are classified. Details about national security undercover tradecraft, specific training received, and involvement in other FBI investigations are also classified. Disclosure of national security UCE identities or specific details about how the FBI conducts national security undercover

operations would cause significant harm to U.S. national security. Such disclosures would damage the effectiveness of the undercover investigative technique, jeopardizing current and future national security investigations. Furthermore, disclosure of national security UCE identities would expose UCEs and their families to significant risks of retaliation by terrorist groups and their supporters, who have demonstrated both an intent and capability to identify and target U.S. government personnel and sources.

Any disclosure of the identity of an FBI national security UCE in this case would necessarily jeopardize any current or ongoing investigation with which they are involved. In fact, if such information were revealed, it would effectively render that UCE unavailable to work in ongoing or future investigations. Because there is such a limited number of highly valuable assets with the necessary background and unique skills to effectively report on FBI terrorism subjects, the loss of this UCE would have a devastating effect on the FBI's ability to detect and disrupt terrorist plots.

    2.    *The national security and safety considerations warrant denying the defendant's request for disclosure of UCE-1's true identity.*

In light of the significant national security and safety concerns outlined above, the Court should deny the defendant's request for UCE-1's true identity. The government does not intend to call any witness that acted as an undercover officer during the investigation. Yet courts have denied defense requests for disclosure of the true identities of UCEs even where the UCE was expected to testify in trial. In *United States v. El-Mezain*, 664 F.3d 467 (5th Cir. 2011), the court affirmed the district court's conclusion that disclosure of the witnesses' true names was not warranted in a case involving violations of § 2339B because (1) there were "concerns for their safety" related to potential retaliation by terrorist organizations, and (2) the witnesses' names were

classified. *Id.* at 492; *see also United States v. Mohamud*, 941 F. Supp. 2d 1303, 1317 (D. Or. 2013) (relying on *El-Mezain* to reject defendant's argument that order approving deletion of undercover employee true names from discovery was error). Similarly, in *United States v. Kwok Cheung Chow*, 772 F. App'x 429 (9th Cir. 2019), the court affirmed the district court's order withholding agents' identities that were classified based on information "suggesting the disclosure of the agents' identities would threaten their safety." *Id.* at 431.

Notably, the defendant has not even attempted to provide a basis upon which to conclude that UC true identities are "relevant and helpful" or "essential to a fair determination of" the case. *Roviaro v. United States*, 353 U.S. 53, 60 (1957). Even if the defendant argued that the UCE's true identity was necessary to conduct an investigation for potential impeachment material, that would not outweigh the significant national security and safety concerns that would be implicated by such a disclosure. The "mere suspicion that information will prove helpful is insufficient to require disclosure." *United States v. Wong*, 886 F.2d 252, 256 (9th Cir. 1989).

Two of the categories request information that—similar to the request for the CHSs' true identities—is classified and, if disclosed, has the potential to harm either the national security, witnesses' safety, or both: (1) request i (name and last known address), and (2) request l (information related to any other investigation in which any witness was involved). Accordingly, as the Court did with regard to the defendant's request for disclosure of the identities of the testifying CHSs, the Court should deny the defendant's request to disclose UCE-1's true identity or identifying information.

7

**B.**     **The defendant's request for *Jencks* and *Giglio* materials for UCE-1 should be denied because the government does not intend to call any witness who acted as a UCE in the case at trial.**

At trial, the government does not intend to call any witness who acted as a UCE in the case. If the government does not intend to call another informant or undercover as a witness, it is under no obligation to produce *Jencks* or *Giglio* material as to the UCE. *Giglio* requires disclosure of evidence affecting credibility "[w]hen the reliability of a given witness may well be determinative of guilt or innocence." 405 U.S. at 154. Here, the reliability of informants and undercover agents only become relevant to the defendant's guilt or innocence if the government intends to call them as a witness at trial to elicit their observations as evidence against the defendant. Any request for the production of *Jencks* material is premature before the witness has testified on direct examination. 18 U.S.C. § 3500(a) ("no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subp[o]ena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."); *see also United States v. Lujan*, 530 F. Supp. 2d 1224, 1249-50 (D.N.M. 2008) (requiring a "showing of materiality before requiring the disclosure of information regarding non-testifying witnesses").

The Court should deny the defendant's request for particular categories of information that he alleges constitute *Giglio* information with regard to UCE-1, specifically: (1) request a (criminal history), (2) request b (promises of immunity or other incentives), (3) request c (proffer statements), (4) request d (material variances in witness's statements), (5) request g (drug use history), (6) request h (psychiatric treatment), (7) request j (convictions and specific instances of misconduct), (8) request k (evidence of

wrongdoing), and (9) request m (threats of prosecution or investigation). Moreover, the Court should deny the defendant's request for material relevant to request e (communications between CHS and government agents), which would be covered by a standard *Jencks* or *Giglio* disclosure.

Accordingly, the Court should deny the defendant's request for specific categories of actual or purported *Giglio* or *Jencks* materials.

**C.     The defendant's requests for additional materials regarding UCE-1 are beyond the scope of discovery required by Rule 16 and the government's constitutional obligations and should be denied.**

Two of the categories request information that does not constitute *Giglio* material: request f (all cases in which the UCE has appeared as a witness on behalf of the prosecution) and request n ("identification of each occasion in which a witness has testified before any court, grand jury, or other tribunal body or made other statements that must be disclosed so defendant can order transcripts"). To support these requests, the defendant cites cases that are wholly inapposite. The government incorporates herein its prior briefing as to these cases. *See* ECF No. 123, at 7-8.

//

//

//

9

**CONCLUSION**

For the foregoing reasons, the government requests that the Court deny the defendant's requests for disclosures as to UCE-1.


Dated this 5th day of January 2026.


Respectfully submitted,

PETER MCNEILLY                          JOHN A.  EISENBERG
United States Attorney                   Assistant Attorney General for the
                                         National Security Division


*s/ Melissa Hindman*                     *s/ Tanya Senanayake*
Melissa Hindman                          Tanya Senanayake
Assistant U.S. Attorney                  D.C. Bar No. 1006218
U.S. Attorney's Office                   Trial Attorney
1801 California St., Ste. 1600           Counterterrorism Section
Denver, CO 80202                         National Security Division
Telephone: 303-454-0100                  United States Department of Justice
Fax: 303-454-0406                        950 Pennsylvania Ave, NW
Email: Melissa.Hindman@usdoj.gov         Washington, DC 20530
                                         Telephone: (202) 514-1092
Attorney for Government                  Email: Tanya.Senanayake3@usdoj.gov

10

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 5th day of January 2026, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send an electronic notification to all counsel of record.

By:  *s/ Melissa Hindman*
Melissa Hindman
Assistant U.S.  Attorney
U.S.  Attorney's Office
1801 California St., Ste.  1600
Denver, CO 80202
Telephone: 303-454-0100
Fax:  303-454-0406
E-mail:   Melissa.Hindman@usdoj.gov
Attorney for Government