IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:23-cr-00349-CNS

UNITED STATES OF AMERICA,

     Plaintiff,

v.

DAVIN MEYER,

     Defendant.

## Motion to Exclude Proposed Testimony of Hassan Hassan

Davin Meyer, through counsel, moves to exclude the testimony of Hassan Hassan proffered in the expert report attached as Exhibit 1 under Federal Rules of Evidence 702, 704, 401, and 403 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). In the alternative, Mr. Meyer requests an evidentiary *Daubert* hearing.

### Summary of Argument

The government first proposes that Mr. Hassan testify about the history, ideology, and operations of ISIS going back to Al-Qaeda and Osama Bin Laden in the year 2004. The proposed history lesson highlights ISIS's brutality, beheadings, "savagery," violence, and imposition of sharia law. This information is not relevant to whether Mr. Meyer was attempting to provide material support to ISIS because it does not make any element of the offense more or less likely. F.R.E. 401. It is not helpful to the jury given the average juror's awareness that ISIS is a terrorist organization. F.R.E. 702. And any probative value is substantially outweighed by the danger of unfair

prejudice as the proposed testimony is highly inflammatory, risks biasing the jury, and creates the risk that the jury convicts Mr. Meyer on the basis of the evidence against ISIS rather than the evidence against him. F.R.E. 403. Moreover, this lengthy background presentation will consume considerable time, duplicate widely known facts, distract from the issues in this case about what happened with Mr. Meyer in 2022 and 2023, and mislead and confuse the jury. *Id.*

The government next proposes that Mr. Hassan opine that Mr. Meyer's communications and phone content show that he supported ISIS. This opinion is not appropriate for expert testimony as any lay juror can assess whether the evidence supports, or does not support, the conclusion that Mr. Meyer supported ISIS. F.R.E. 702. It invades the province of the jury, and it is inadmissible mental state testimony. F.R.E. 704.

### The Proffered Testimony on the Formation of ISIS Is Not Helpful to the Jury and Unfairly Prejudicial

It is undisputed that ISIS is a foreign terrorist organization. Everyone knows that ISIS is a foreign terrorist organization. Moreover there is no reasonable way to dispute that it is a designated terrorist organization pursuant to the requirements of the statute under which Mr. Meyer is being prosecuted. The history of ISIS proffered by Mr. Hassan does not make any of the elements of the offense more or less likely. The history is not useful to the jury. The history distracts from the real issues in the case. It is a needless waste of time designed to unfairly prejudice Mr. Meyer.

More specifically, the government's proposed testimony would take jurors back to Iraq in 2004 – the year Mr. Meyer was born – in a purported effort to explain the origins

of ISIS. It would discuss Al Qaeda, how there were multiple branches of Al Qaeda, how one of those branches of Al Qaeda was led by Osama Bin Laden, and how that branch was a predecessor of ISIS.

This information does not make any element of the offense more likely. F.R.E. 401. It is unfairly prejudicial. As any juror will know, Al Qaeda and Osama Bin Laden were responsible for the 9/11 terrorist attack, by far the deadliest terrorist attack in U.S. history. Any probative value of this history lesson is far outweighed by the danger of unfair prejudice. F.R.E. 403.

The government next proposes to have Mr. Hassan testify about how Al-Qaeda in Iraq became the Islamic State of Iraq in 2006, pursued various territorial ambitions, and imposed sharia law in territories it took over. This proposed testimony suffers the same fatal flaws as the testimony above. F.R.E. 401, 403, 702.

Then the government would like to expound upon a leadership change in 2010, the name change to ISIS in 2013, the new leader's ambitions, and that ISIS captured and controlled various areas of Syria and Iraq. Again, this information is not relevant or useful to the jury but is unfairly prejudicial. *Id.*

Next, the government would like Mr. Hassan to testify about how the new leader called on people from other countries to immigrate to support ISIS and that immigration peaked in 2014 to 2016, years before the events in this case. If properly qualified to do so and as discussed in more detail below, Mr. Hassan may be able to testify about the meaning of hijra to explain the use of that term in the communications between Mr.

Meyer and the government's confidential human sources ("CHSs"), but no history lesson is required for that.

Finally, the government intends to introduce testimony that ISIS has lost territory in the years since then but continues to be a terrorist organization that recruits people. This information is common knowledge, does not require expert testimony, is not relevant, and is not useful to the jury.

### The Ideology and Operation of ISIS

The government next proposes lengthy testimony on the ideology and operation of ISIS. The government's burden in this case is to prove an attempt to provide material support to ISIS. It is undisputed and everyone knows that ISIS is a FTO. A graduate level understanding of the different branches of ISIS, its ideological underpinnings, and theological divides within the organization does not make any of the elements of the offense more or less likely, nor is it useful to the jury. It is, however, unfairly prejudicial because many of the features of a strict interpretation of Islamic law are not criminal but they are antithetical to Western values and raise the specter of unfairly biasing the jury against Mr. Meyer.

### The Glossary

It is not until the final two lines of the proposed expert testimony that the government hits on a permissible basis for limited expert testimony from Hassan Hassan, subject to qualification and the rules of evidence. The government writes that "Mr. Hassan will also testify regarding the meaning of terms used in the defendant's communications. A glossary of terms to which Mr. Hassan will testify will be provided in

advance of his testimony." To the extent that Mr. Meyer is actually using terms beyond the knowledge of the average juror, Mr. Hassan's testimony about the meaning of those terms is conceivably relevant and helpful. However, the government's expert disclosure omits this critical information. The disclosure does not provide the terms Mr. Hassan intends to define, nor does it provide the proposed definitions.

The "disclosure for each expert witness must contain: a complete statement of all opinions that the government will elicit from the witness." Fed. R. Crim. P. 16(a)(1)(G)(iii). The purpose of this requirement is to afford the defendant the opportunity to review the proposed testimony, contest it as appropriate, and "provide a fair opportunity to meet the government's evidence." Fed. R. Crim. P. 16(a)(1)(G)(ii); Fed. R. Crim. P. 16 advisory committee's note to 1993 amendment. With respect to terms used in Mr. Meyer's communications, the government has failed to provide the required information in its report, namely the terms to be defined and their definitions. Should the government produce this information at a later date, the failure to provide this information within the time required to evaluate the definitions will unfairly prejudice Mr. Meyer's right to a fair trial.

### Different Branches of ISIS

The government proposes having Mr. Hassan testify about different branches of ISIS, specifically those in Syria and Afghanistan, and their belief systems. Mr. Meyer does not appear to have been sophisticated enough to make any such distinction, and those distinctions are not relevant to this case. While these distinctions may have had some relevance to another recent case in this jurisdiction where a boy with autism was

accused of trying to join ISIS in Afghanistan, those distinctions have no bearing here and they should not be the subject of expert testimony.

## Voice of Khurasan

The government proposes having Mr. Hassan testify about an ISIS publication called Voice of Khurasan. Voice of Khurasan is a publication of a separate branch of ISIS that operates primarily out of Afghanistan and is not at issue in this case. This section of the report, again, appears geared towards a different case against a different boy with autism. Not only is the information related to Voice of Khurasan irrelevant and not useful to the jury, it is also unfairly prejudicial, confusing, and misleading. Mr. Hassan proposes to testify that Voice of Khurasan "advertis[es] anything from administration to beheadings," "advertis[es] violence" and is part of an effort to "advertise[] its violence and savagery as part of its strategy to instill fear in its enemies and attract radical followers." This proposed testimony, like so much of the proposed testimony, is simply an effort to distract from the real issues in the case and convict Mr. Meyer by making the trial about ISIS rather than the events of the case.

## ISIS Recruitment Efforts

The real recruiters in this case were the CHSs, not ISIS. In communications that the government has refused to disclose to the defense, someone provided Mr. Meyer with contact information for one of the CHSs. The CHSs then set to work to get Mr. Meyer to the flight to nowhere that is the basis of this case. The relevant information here is not ISIS's recruitment efforts; if anything, it is our government's recruitment efforts.

The government may respond that Mr. Meyer was in touch with Anjem Choudary, who has been convicted of various offenses in connection with his support of ISIS from the UK. This argument misses the mark. While Mr. Meyer may have discussed arcane theological issues with Mr. Choudary, Mr. Choudary did not recruit Mr. Meyer to ISIS and they did not discuss the subject of this case – attempting to join ISIS.

### Other People Traveling to Join ISIS

Mr. Meyer's communications that are at issue in this case are his communications with the CHSs, not with ISIS. There was never any danger of him actually arriving in Syria or elsewhere to fight for ISIS. So, the proposed testimony about other people traveling to support ISIS, how ISIS assists people who want to travel to support ISIS, travel routes, and the value of foreign volunteers is not relevant to this case. It merely serves to prejudice the jury against Mr. Meyer.

### ISIS Calls for Local Attacks

The claim that ISIS calls on people to commit attacks in their home countries does not make any of the elements of the offense more or less likely and is unfairly prejudicial.

### Anjem Choudary

The government proposes to have Mr. Hassan testify as follows: "Mr. Hassan will also testify about Anjem Choudary, with whom the defendant claimed to be connected. Mr. Hassan will describe that Choudary previously had been convicted in the United Kingdom under Section 12 of the Terrorism Act 2000 for inviting support of a proscribed organization, namely the Islamic State, between June 2014 and March 2015, that

Choudary was released in 2018 and arrested again in July of 2023, and that Choudary has since been convicted and sentenced to life imprisonment for directing a terror organization." This is impermissible expert testimony for multiple reasons.

First, the proposed testimony is inadmissible hearsay. While an expert may testify regarding facts or data that they relied on in forming their opinion if experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, Fed. R. Evid. 703, the expert may not "simply transmit . . . hearsay or other inadmissible evidence to the jury." *United States v. Rodriguez*, 125 F.Supp.3d 1216, 1252 (D. N.M. 2015). Such inadmissible hearsay can only be used as the basis for the expert's opinion and *not for the truth of the matter asserted*. *Rubin v. United States Life Ins. Co. in the City of New York*, No. 15-CV-00384-PAB-NYW, 2016 WL 11165513, at *7 (D. Colo. July 1, 2016). If an expert simply parrots an out-of-court statement, rather than conveying an independent judgment that only incidentally discloses the statement, then the expert is impermissibly disclosing that statement for its substantive truth. *Id.* When this happens, the expert "becomes little more than a backdoor conduit for an otherwise inadmissible statement." *Id.* (quoting *United States v. Pablo*, 696 F.3d 1280, 1288 (10th Cir. 2012). Mr. Hassan does not provide an independent judgment based on the fact that Mr. Choudary was convicted of these offenses. The proposed testimony is simply a backdoor way of introducing the hearsay statement that Choudary was convicted of terrorist offenses for its truth and seeking to convict Mr. Meyer by association. The rules of evidence do not permit this.

8

Second, the proposed testimony is not relevant. While the government may be able to establish that Mr. Meyer communicated with Mr. Choudary, the government has not produced any evidence that Mr. Meyer and Mr. Choudary talked about joining ISIS.

Finally, the sole purpose of introducing this evidence is to unfairly prejudice Mr. Meyer by making him guilty by association. That is not permitted.

**Mr. Meyer's Mental State**

The government proposes to have Mr. Hassan "testify that many of the defendant's communications and device content demonstrate that he supported ISIS." This testimony is impermissible because it is not helpful to the jury and is an impermissible mental-state opinion that invades the province of the jury.

First, the testimony is not helpful to the jury. The government will introduce straightforward direct evidence – such as Mr. Meyer's communications with the CHSs and recorded video statements purportedly pledging allegiance to ISIS – to evince Mr. Meyer's motives. "A lay juror is fully capable of understanding and inferring Defendants' motives through direct evidence without the aid of expert testimony." *United States v. Leveille*, No. 1:18-CR-2945-WJ, 2023 WL 5043875, at *3 (D.N.M. Aug. 8, 2023). "For this reason, 'courts routinely exclude expert testimony as to intent, motive, or state of mind as impermissible.'" *Id.* (quoting *Liberty Mutual Fire Insurance Co v. Michael Baker International, Inc.*, No. 19-cv-881-JNP, 2022 WL 973079, at *11 (D. Utah Mar. 31, 2022)). Opinions, like this one, that are not beyond the ken of the average juror are not helpful to the jury and are not properly the subject of expert testimony. *United States v. Rodriguez*, 125 F.Supp.3d 1216, 1255-57 (D. N.M. 2015).

In *Leveille*, the court excluded expert testimony that defendant's actions were inconsistent with jihadism because that was a determination that was within the capabilities and province of the jury. 2023 WL 5043875, *3. Similarly, in *Rodriguez*, the court excluded expert testimony that defendant's actions were consistent with those of a drug runner, as opposed to a blind mule, because that was properly a jury determination, the jury did not need expert help with that determination, and the government's purpose for the opinion was to "vouch for their closing arguments" rather than provide "an insight to which only a seasoned expert could come." 125 F.Supp.3d at 1257. In much the same way here, the jury does not need help from Mr. Hassan to determine whether things like "[t]he defendant's explanation for how he came to support ISIS," his pledge to support ISIS, and his references to martyrdom and jihad to determine whether or not Mr. Meyer supported ISIS.

Second, the proposed testimony invades the province of the jury. F.R.E. 704(b) states that "an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged." The rule "prevents experts from expressly stating the final conclusion or inference as to a defendant's actual mental state." *Rodriguez*, 125 F.Supp.3d at 1257. Mr. Hassan's proposed opinion that Mr. Meyer "supported ISIS" in a material support case is an impermissible conclusion about Mr. Meyer's mental state.

The government also proposes that Mr. Hassan opine that Mr. Meyer's communications and device content "demonstrate . . . a deep understanding of ISIS's ideology." This testimony is impermissible for the same reasons. The jury is more than

10

capable of determining whether the evidence shows that Mr. Meyer had a deep understanding of ISIS or something less than that. Suggesting more is to speculate as to Mr. Meyer's mental acuity, the significance of the information he received and the level of understanding he attained by reading and rote recollection of his communications.

Finally, the government's bid to have Mr. Hassan review the evidence in the case for the jury to provide the opinion that the evidence in the case shows that Mr. Meyer supported ISIS is just an attempt to provide a summary of the government's investigation clothed as expertise. *United States v. Garcia*, 793 F.3d 1194, 1213-16 (10th Cir. 2015). The government's expert testimony may not be permitted to become "more like a summary of the facts than an aide in understanding them." *Id.* at 1213. When that happens, the expert is "no longer aiding the jury in its factfinding but is instructing the jury on the existence of facts needed to satisfy the elements of the charged offense." *Id.* (quoting *United States v. Mejia*, 545 F.3d 179, 191 (2d Cir. 2008)). By proposing that Mr. Hassan recite the facts that support his impermissible conclusion that Mr. Meyer supported ISIS, that is exactly what the government is attempting to do.

### Qualifications

The only potentially admissible expert testimony posited by the government is testimony on what certain terms mean, but the government has failed to identify those terms or provide their definitions. It may be that Mr. Hassan is qualified to provide that information, but it is not evident from the report and resume provided by the government.

Mr. Hassan states that he wrote a book about ISIS that sold a lot of copies and has written hundreds of articles, reports, or opinion pieces about terrorism and ISIS. He makes no claim that any of these materials were peer reviewed or have been recognized as a valid research effort or reference book in the field. *United States v. Murphy*, 457 F.Supp.2d 1228, 1232 (D. Kan. 2006) (concluding proposed expert's authorship of books and articles was insufficient to qualify him as an expert).

Mr. Hassan states that he has conducted trainings and has been called to testify before various government bodies. Some of this testimony and training appears unrelated to the contents of his expert report. For example, he cites his testimony on "Safeguarding Religious Freedom in Northeast Syria," a topic that would appear to be far removed from the issues in this case. He claims to have provided trainings on Salafi-jihadism and tribal dynamics as well as other related issues. Moreover, there is nothing to indicate how this experience qualifies him to provide opinions on the meanings of terms used in the ISIS community.

Mr. Hassan states that he conducted countless interviews with U.S. officials, ISIS fighters, anti-ISIS fighters, and other relevant personnel without any indication of who these people are, when the interviews were conducted, or what information they provided. Mr. Hassan similarly claims to have reviewed hundreds of primary source documents on ISIS. The only primary source he specifically identifies, however, is a speech from an ISIS leader in 2014. Other primary sources cited are fighter intake forms, ISIS propaganda, and social media posts. Without more, Mr. Meyer cannot assess whether Mr. Hassan is qualified under Rule 702.

Lastly, Mr. Hassan states that he has reviewed hundreds of military and intelligence documents on ISIS, read hundreds of reports, articles and books on ISIS, and been to lots of lectures on ISIS. This perhaps suggests he is a historian when it comes to ISIS but as stated above it does not support his ability to introduce appropriate information regarding the charges the government is trying to establish against Mr. Meyer. Furthermore, this opaque aggregation does not permit the Court, or Mr. Meyer, to test whether Mr. Hassan's opinions are based on sufficient facts or data and are the product of reliable principles and methods. F.R.E. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

## Conclusion

For these reasons, the Court should exclude the proposed testimony of Mr. Hassan or, at the very least, hold a *Daubert* hearing.

Dated: June 5, 2026

Respectfully submitted,

*s/ David S. Kaplan*
David S. Kaplan
STIMSON LABRANCHE HUBBARD, LLC
1652 Downing Street
Denver, CO 80218
Phone:  720.689.8909
Email:  kaplan@slhlegal.com

*Counsel for Davin Meyer*

13

**Certificate of Service**

I certify that on June 5, 2026, I electronically filed the foregoing *Motion for Leave to File a Reply to Government's Supplemental Response (ECF 221)* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address:

Melissa Hindman, AUSA
melissa.hindman@usdoj.gov

s/ Nancy Hickam
Nancy Hickam, Paralegal